KESHAN v. GATES, appellant.

*Animals — owner of vicious horse — when liable — habit of pulling — evidence.*

Defendant owned a mare, which had a habit of suddenly "pulling" back upon her halter when excited or restless. This habit was known to defendant He left the mare at a hotel, kept by plaintiff's employer, to be cared for, giving plaintiff no notice of the habit. While plaintiff was hitching the mare in the stable, and in doing so, had put her halter rope through a ring, she pulled suddenly back, drawing the rope through the ring. Plaintiff's finger was caught between the rope and ring and torn to pieces. *Held*, that defendant was not bound to notify plaintiff of the habit of the mare to pull

Where the vicious habit of the animal is directly dangerous, such as kicking or biting in a horse, hooking in a horned animal, or biting in a dog, the owner, if it is known to him, is bound to notify those dealing with the animal of such habit, but it is otherwise when the habit is not such as will directly inflict injury. *Dickson* v. *McCoy*, 39 N. Y. 400, explained.

A witness for defense, on cross-examination, testified that he heard the mare was a puller before the accident in question. He also testified as to what defendant's son had said upon the subject of the mare's pulling. *Held*, that the evidence was inadmissible.

APPEAL from a judgment in favor of plaintiff entered upon the report of a referee.

In July, 1871, the plaintiff was in the employ of one Harris, who kept the American Hotel in the city of Watertown.

The defendant lived some 15 miles distant, and was accustomed to stop with his team at said hotel. He owned a pair of mares, one of which was a restless, nervous animal, and as the referee finds, accustomed, when hitched, to pull upon her halter and occasionally break it.

The plaintiff had, on numerous occasions, while at the American Hotel, and other hotels in Watertown, taken charge of and fed and groomed the defendant's team, but did not, as he swears, and as the referee finds, know of this habit of "pulling," as it is called, of the mare in question, nor did the defendant inform him that she had such a habit.

In July, 1871, the defendant stopped with the pair of mares above mentioned at the American Hotel, and the plaintiff took charge of them and drove them into the stable.

Desiring to clean them, he took them, one at a time, and hitched them to rings in the side of the barn. While attempting to fasten the off mare, as she is called, and while putting the halter strap through the ring, one of his fingers was caught in the strap, and she suddenly stepped back and pulled on the strap, and the finger was torn off at the second joint.

The referee finds that defendant knew of the habit of the mare to pull upon the halter, and that he did not disclose it to the plaintiff.

He ordered judgment for the plaintiff for $200 damages, together with costs, and from that judgment the defendant appeals.

*Charles Dwight* and *James F. Starbuck*, for appellant.

*Anson B. Moore*, for respondent.

MULLIN, P. J. The general rule is, that if a man keeps a vicious animal, that he knows to be such, and he does not take sufficient measures to prevent it from doing mischief, he will be answerable for any injury it may do the person or property of another. 1 Wait's L. & P. 846.

Where an animal is trespassing on the premises of another, the owner is liable for whatever mischief it may do, although not cognizant of its nervous habits or propensities. 1 Wait's L. & P. 849.

GROVER, J., in *Dickson* v. *McCoy*, 39 N. Y. 400, 403, gives a definition of vicious propensity, which must be borne in mind in considering the question of defendant's liability. He says: "By

vicious propensity is included a propensity to do any act that might endanger the safety of the person or property of others in a given situation. Not such only as would impair the utility of the animal for the purpose for which it is kept."

If a man has a horse or other animal that is given to kicking or biting, it is his duty to take such measures as will prevent it from injuring either persons or property, and, if he cannot use it in his business and prevent the animal from indulging in its habit, he must cease to use it where the persons or property of others is exposed.

But domestic animals acquire many habits, indulgence in which may or may not be dangerous to others, depending on the circumstances in which the habit is indulged in.

Indeed, there is scarcely any bad habit that may not, at times, be dangerous.

Balking cannot be called a vicious propensity, yet should a horse balk while crossing a railroad, and the cars approaching, it might cause the destruction of the train and the lives of persons upon it.

Such a result might not happen in a hundred years, yet it may happen, and if the owner is liable for the injury done, he must cease to use a balky horse.

The defendant's horse might have pulled upon his halter a thousand times and not injure any one, yet, if the definition of GROVER, J., is to be applied as broadly as it is stated, the defendant was bound, if he knew of the habit, to cease altogether to use it if the persons or property of others were liable to be injured.

It seems to me that the vicious habits or propensities which the owner of an animal must (when known to him) guard against are such as are directly dangerous, such as kicking and biting in horses, and hooking in horned animals, and biting in dogs. These habits or propensities may be indulged in at any moment, and are inevitably dangerous.

The habit of pulling, as it is called, in horses, is not necessarily nor even ordinarily dangerous, but if the habit is known to the owner, he should use such means to guard against injury to others as experience shows to be proper.

It would ordinarily prevent mischief, to secure the animal by a halter, that it could not, by pulling, break, but that would not prevent the happening of such an accident as that which befell the plaintiff.

His was one of those injuries that human foresight cannot guard against or prevent.

No case has been cited, nor have I been able to find one in which it is held, that it is the duty of the owner of animals to disclose to third persons their bad habits, unless he is selling them, and disclosure of defects is imposed upon him as a duty.

If the habit is such as, by possibility, may be injurious, if indulged in, adequate measures to prevent its indulgence must be adopted. But, where the chances of injury are so exceedingly small that careful and prudent persons would not resort to measures of protection against their occurrence, yet injury does happen, the owner is not liable, although no measures of prevention are taken.

An owner should give notice to persons dealing with an animal that has vicious propensities, when he knows that serious injury would be inflicted if the animal should take occasion to indulge therein.

When a biting or kicking horse is left with a blacksmith to be shod, or with a hostler to be groomed, notice is indispensable to prevent serious and, it may be, fatal injury.

But who could anticipate that the plaintiff or any person would have his finger in the position in which the plaintiff's was, and that the loss of the finger would be the result.

Again, as it is impossible for any person to anticipate what injury may, under a fortuitous concurrence of circumstances, be caused by an animal indulging in the most harmless of its habits, it would follow that the owner must enter, at every hotel and blacksmith shop, upon an enumeration of all the bad habits of his horse, or be subjected to damages if, by reason of indulging in one of them, injury should result.

The case was not, in my judgment, one in which the defendant was under any legal obligation to notify the plaintiff that the horse was a "*puller ;*" that duty is imposed only when the habit is one that is ordinarily and directly dangerous to either person or property.

On the trial, one Zeron, a witness called by defendant, testified that he had taken care of the horses of defendant for some two years, and had never known the off mare to pull at the halter.

He was asked, on cross-examination, whether he had heard the mare was a puller before the accident in question. The question was objected to and the objection was overruled, and defendant's counsel excepted. The witness answered he had.

He was then asked whether he had talked with defendant's son about her being a puller, and what the son said on that subject. The defendant's counsel objected to the question, the objection was overruled, and defendant's counsel excepted. The witness answered he did talk with the son, and he told him (witness), to look out for her.

This evidence was wholly incompetent. It was wholly immaterial what the witness had heard as to the habits of the mare.

He had been called on to testify what he knew about her pulling, of his own knowledge. That evidence was competent; but what he might have heard on that subject was wholly immaterial and incompetent. Again, the statements of the son were not admissible against the father.

What influence the illegal evidence might have had on the mind of the referee, it is impossible to ascertain, but it could not be otherwise than mischievous.

Whatever our views might be on the other question, the judgment must be reversed for the errors in admitting the evidence of the defendant's son.

Judgment is reversed and new trial ordered before another referee, costs to abide event.

*Judgment accordingly.*